## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE ACOSTA,** | **CASE NO. 1:19-cv-01224-AWI-EPG** |
| **Plaintiff,** | |
| **v.** | **ORDER DENYING RULE 12(b)(1) MOTION TO DISMISS** |
| **MARIA DEL CARMEN PARRA PEREZ; THU HUYNH; NGOC TRAN,** | (Doc. Nos. 10, 22) |
| **Defendants.** | |

## I.  Introduction

This lawsuit is about a brick-and-mortar store in Fresno, California, that allegedly discriminated against a physically disabled customer.  The disabled customer is Plaintiff Jose Acosta.  The store is Lesly's Gifts and More, which is operated by Defendant Maria Perez.  The store's premises are owned by Defendant Thu Huynh, who leases the premises to Perez.  Acosta sued Perez and Huynh for disability discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and California's Unruh Civil Rights Act, Cal. Civ. Code § 51.

Perez now moves the Court to dismiss Acosta's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction because, according to Perez, Acosta lacks standing under Article III of the Constitution.  See Doc. No. 10.  Huynh joins Perez's motion.[1]  See Doc. No. 22.  For reasons discussed below, the Court will deny Perez's motion.

## II.  Facts

Acosta made the following allegations in his verified complaint to support his disability discrimination claims.  See Doc. No. 6 (first amended verified complaint).  The store, Lesly's Gifts and More, sells flowers.  Acosta, who uses a wheelchair because of his physical disability,

---

[1] Although Huynh styled her joinder as a "motion," the joinder clearly states that Huynh joins Perez's motion for the reasons "set forth in [Perez's] Motion to Dismiss."  Doc. No. 22.

and his son visited the store to buy roses on or around February 13, 2018, the day before Valentine's Day.  Upon entering the store's parking lot, Acosta could not find an accessible parking stall.  Consequently, Acosta parked in an empty standard parking stall that lacked an access aisle.  Other cars were parked on both sides of the stall.  This made it difficult for Acosta to get out of his car and into his wheelchair.  After getting into his wheelchair, Acosta found no ramp to the sidewalk leading to the store's entrance.  Consequently, Acosta's son helped Acosta wheel over the sidewalk curb, which was difficult.  After entering the store, Acosta wanted to browse through the store, but the store's aisles lacked a "clear width" for Acosta's wheelchair to fit through.  Doc. No. 6.  This made it difficult for Acosta to browse through the store.  While in the store, Acosta needed to use a restroom to empty his catheter bag, but Acosta was told by an employee that his wheelchair would not fit in the restroom.  Consequently, Acosta was unable to use the restroom to empty his catheter bag, which was uncomfortable for Acosta.  After selecting roses to purchase, Acosta went to the store's transaction counter to pay for the roses, but the transaction counter was high and the surface was obstructed.  This made it difficult for Acosta to reach over the counter to pay for the roses.

Based on these allegations, Acosta sued Perez and Huynh for claims of disability discrimination in violation of Title III of the ADA and California's Unruh Civil Rights Act.  Based on these claims, Acosta prays for both damages and an order enjoining the defendants from continuing to violate the ADA and Unruh Civil Rights Act.

### III.   Perez's Motion to Dismiss for Lack of Standing

**A.**      **Perez's arguments.**

Perez argues that Acosta lacks Article III standing to maintain his disability discrimination claims.  According to Perez, Acosta lacks constitutional standing because Acosta's allegations of the store's discrimination are "false," "fraudulent," "frivolous," and "fabricated."  Doc. No. 10-1.  Specifically, as for Acosta's allegation that Acosta went inside the store to purchase roses on February 13, 2018, Perez argues that the allegation is false and fabricated because on that date the store only displayed roses outside the store's entrance, not inside the store.  Next, as for Acosta's allegation that the store's aisles lacked a clear width for Acosta's wheelchair, Perez argues that the

1   allegation is false because all roses were displayed and sold outside the store's entrance, so Acosta

2   could only have purchased the roses outside the store, not inside the store, meaning Acosta never

3   would have entered the store.  Next, as for Acosta's allegation that an employee told Acosta that

4   his wheelchair would not fit in the restroom, Perez argues that the allegation is false and fabricated

5   because the store has no restroom on the premises.  Next, as for Acosta's allegation that Acosta

6   reached over the transaction counter to pay for the roses, the allegation is false and fabricated

7   because "[t]he only way [the store] conducts credit card payments are through Square, and app

8   located on [Perez's] cell phone," and "there is no credit card point of sale device located on the

9   counter."  Id.

10      To support her argument that Acosta's foregoing allegations are false, Perez cites to

11   evidence that, in Perez's view, proves Acosta's allegations are false.  Specifically, Perez cites to

12   the declaration of Perez's certified access specialist inspector, Philip Mettler, who declared that he

13   visited the store on September 30, 2019, and made multiple observations.  First, Mettler observed

14   that the width of the store's aisles is in excess of forty-four inches, which, according to Mettler,

15   complies with the ADA Design Standards (ADADS) and the California Building Code (CBC).

16   Second, Mettler observed that the store lacks a restroom.  Third, Mettler observed that a portion of

17   the transaction counter is thirty-two inches above the floor and includes a check-writing surface,

18   which, according to Mettler, complies with the CBC.

19      In addition to Mettler's declaration, Perez also cites to her own declaration.  There Perez

20   declared that all of the store's flowers were displayed outside the store's entrance on the date of

21   Acosta's alleged visit, February 13, 2018.  Perez also declared that she uses her cell phone for

22   credit and debit card transactions at the store, and she conducts all credit and debit card

23   transactions with each customer one-on-one.  This means, according to Perez, that for any

24   customer who wants to purchase flowers that are displayed outside the store's entrance, Perez

25   "would have no reason to require [the customer] to make any transaction utilizing the counter

26   inside [the store]."  Doc. No. 10-3.

27      Perez does not argue that Acosta's allegations about the lack of an accessible parking stall

28   and a wheelchair ramp outside the store are false.  But Perez argues that these allegations, even if

3

1   true, cannot make Perez liable.  This is because, according to Perez, the premises outside the store

2   are the contractual responsibility of the landlord, not Perez, pursuant to the lease agreement.  To

3   support this argument, Perez cites to a copy of the written commercial lease agreement between

4   Perez and Huynh, which, according to Perez, states that Huynh, not Perez, is responsible for the

5   premises outside the store.  On this basis, Perez asserts that declaratory relief should be issued by

6   the Court "to delineate the scope of [Perez's] legal responsibility" concerning the premises outside

7   the store.

8   **B.**      **Acosta's arguments.**

9         Acosta argues that Perez's motion must be denied.  According to Acosta, this is primarily

10   because it is improper for a court to dismiss a federal question claim on a Rule 12(b)(1) motion

11   when the substantive issues of the federal claim are closely intertwined with the court's subject-

12   matter jurisdiction.  In this lawsuit, Acosta argues, the ADA provides the jurisdictional basis for

13   the Court's federal question subject-matter jurisdiction as well as the substantive basis for the

14   ADA discrimination claim — meaning, according to Acosta, that the question of the Court's

15   subject-matter jurisdiction is intertwined with the substantive merits of the ADA claim.

16   Consequently, according to Acosta, dismissal for lack of subject-matter jurisdiction under Rule

17   12(b)(1) is inappropriate.

18         Acosta also argues that even if Court were to entertain Perez's evidence-based argument

19   that Acosta's allegations are false, then dismissing Acosta's discrimination claims for lack of

20   standing is still inappropriate because Perez's evidence fails to prove that Acosta's allegations are

21   false.  Specifically, as for Acosta's allegation that Acosta went inside the store to purchase roses

22   on February 13, 2018, Acosta does not dispute the fact that all the store's flowers were displayed

23   outside the store's entrance on that date.  But according to Acosta, this fact is not mutually

24   exclusive of the fact that Acosta entered the store to purchase the roses and browse through the

25   store on that date.  Acosta supports this point with his own declaration, wherein he declared that

26   he selected a rose bouquet outside the store's entrance but was then led inside the store by an

27   employee to pay for the roses, and then while in the store, Acosta wanted to browse through the

28   store.

As for Acosta's allegation that the aisles lacked a clear width for Acosta's wheelchair, Acosta supports this allegation with his own declaration and the declaration of Acosta's private investigator, Rick Moore, who declared that he visited the store on August 24, 2019, and observed the path of travel in the aisles was "reduced to less than 44 inches by obstructions, including to less than 32 inches in some areas." Doc. No. 16-5.

As for Acosta's allegation that an employee told Acosta that his wheelchair would not fit in the restroom, Acosta does not dispute the fact that the store lacks a restroom. But according to Acosta, this fact is not mutually exclusive of the fact that Acosta was told by an employee that his wheelchair would not fit in the restroom. Acosta supports this point with his own declaration, wherein he declared that he asked a woman in the store if he could use the restroom and the woman told him that he would not fit in the restroom. Acosta also supports this allegation with the declaration of his private investigator, Moore, who declared that he asked a store employee on August 24, 2019, whether Moore could use the restroom, and the employee told Moore that the store does not have a restroom but that Moore could use the restroom at the next-door barber shop.

As for Acosta's allegation that Acosta reached over the transaction counter to pay for the roses, Acosta does not dispute the fact that the store uses Perez's cell phone for credit and debit card transactions. But according to Acosta, this fact alone does not disprove Acosta's allegation. Acosta supports this point with his own declaration, wherein he declared that a female store employee stood behind the transaction counter and Acosta had to hand his credit card to the employee over the counter, which was difficult for Acosta due to the height of the counter and the merchandise that was displayed on top of the counter. Acosta also supports this point with the declaration of his certified access specialist consultant, Michael Bluhm, who declared that he conducted a site inspection of the store on September 30, 2019, and observed that the store's transaction counter is over thirty-six inches in height.

## C.     Legal standard for dismissal at the pleading stage for lack of standing.

Standing is a judicially created doctrine that is an essential part of the case-or-controversy requirement of Article III of the Constitution. Pritikin v. Department of Energy, 254 F.3d 791, 796 (9th Cir. 2001). Standing under Article III is a constitutional limitation on a federal court's

1   subject-matter jurisdiction.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004)

2   (citations omitted).  Therefore, standing under Article III is said to be "a species of subject-matter

3   jurisdiction."  Cariajano v. Occidental Petroleum Corp., 645 F.3d 1216, 1227 (9th Cir. 2011).

4   Accordingly, a party may move for dismissal for lack of standing under Rule 12(b)(1), id., which

5   is the procedural avenue by which a party asserts the defense that the federal court lacks subject-

6   matter jurisdiction over the lawsuit.  Fed. R. Civ. P. 12(b)(1).  To avoid a dismissal for lack of

7   standing, the "plaintiff must demonstrate standing for each claim he seeks to press and for each

8   form of relief that is sought."  Maya v. Centex Corp., 658 F.3d 1060, 1068-69 (9th Cir. 2011)

9   (citations omitted).

10      Standing under Article III is demonstrated by the following three elements.

11      First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally
        protected interest which is (a) concrete and particularized and (b) actual or
12      imminent, not conjectural or hypothetical.  Second, there must be a causal
        connection between the injury and the conduct complained of — the injury has to
13      be fairly traceable to the challenged action of the defendant, and not the result of
        the independent action of some third party not before the court.  Third, it must be
14      likely, as opposed to merely speculative, that the injury will be redressed by a
        favorable decision.

15

16   Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted).

17      Each element of standing "must be supported . . . with the manner and degree of evidence

18   required at the successive stages of the litigation."  Id. at 561.  For example, "at the summary

19   judgment stage the plaintiffs need not establish that they in fact have standing, but only that there

20   is a genuine question of material fact as to the standing elements."  Cent. Delta Water Agency v.

21   United States, 306 F.3d 938, 947 (9th Cir. 2002).  By contrast, at the pleading stage, "general

22   factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to

23   dismiss we presume that general allegations embrace those specific facts that are necessary to

24   support the claim."  Defenders of Wildlife, 504 U.S. at 561 (citations omitted); see also Lucas v.

25   S.C. Coastal Council, 505 U.S. 1003, 1012 n. 3 (1992) (cautioning that while at the summary

26   judgment stage the court "require[s] specific facts to be adduced by sworn testimony," a

27   "challenge to a generalized allegation of injury in fact made at the pleading stage . . . would have

28   been unsuccessful").  This means that for purposes of ruling on a motion to dismiss for want of

standing at the pleading stage, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). "If the pleadings establish facts compelling a decision one way," then "that is as good as if depositions and other . . . evidence on summary judgment establish the identical facts." Weisbuch v. County of L.A., 119 F.3d 778, 783, n.1 (9th Cir. 1997).

Federal courts are cautioned against improperly considering a merits question under the guise of a Rule 12(b)(1) standing challenge. See Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016) ("We have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits."). This is because Article III's standing requirement "is analytically distinct from the merits of the underlying dispute." Id. at 348. "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." Raines v. Byrd, 521 U.S. 811, 818 (1997). But the standing inquiry does not focus "on the issues [the plaintiff] wishes to have adjudicated." Flast v. Cohen, 392 U.S. 83, 99 (1968). As a result, when the defendant's jurisdictional attack also implicates the merits of the plaintiff's claim, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." Lawrence v. Dunbar, 919 F.2d 1525, 1529-30 (11th Cir. 1990); see also Sun Valley Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 139 (9th Cir. 1983) ("Jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."). This course of action protects against Rule 12(b)(1) being "expanded beyond its proper purpose." Davis, 824 F.3d at 349.

While Rule 12(b)(1) must not be expanded beyond its proper purpose, the Supreme Court has authorized federal courts to dismiss lawsuits under Rule 12(b)(1) for merits-related defects, but only in "narrow categories of cases." Id. at 350. Namely, "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682 (1946). This means

that "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Kulick v. Pocono Downs Racing Ass'n, Inc., 816 F.2d 895, 899 (3d Cir. 1987) (quoting Oneida Indian Nation v. Cty. of Oneida, 414 U.S. 661, 666 (1974)). The Third Circuit offered the following illustration of a lawsuit falling into the "wholly insubstantial" exception at the pleading stage:

> It is possible, of course, to imagine a plaintiff who sues Corporation X on a claim that it is responsible for a civil war somewhere on the other side of the planet. To establish its standing, that plaintiff would have to satisfy the second Lujan factor and show an injury "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." That is, we believe, the kind of implausible allegation the Supreme Court had in mind when it crafted the exception permitting dismissal under Rule 12(b)(1) for wholly insubstantial claims to jurisdiction.

Davis v. Wells Fargo, 824 F.3d 333, 348-50 (3d Cir. 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "Given the tightly circumscribed definition of these categories, dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." Davis, 824 F.3d at 350.

**D.   Discussion.**

The thrust of Perez's argument that although Acosta sufficiently pleaded that Acosta suffered an injury caused by Perez, Acosta nonetheless lacks standing because Acosta's allegations of an injury — namely, disability discrimination at the store — are false and fabricated. At this pleading stage, Perez's argument is fundamentally flawed because it contravenes the foregoing legal standard.

Despite the Supreme Court and Ninth Circuit clearly holding that the trial court "must accept as true all material allegations of the complaint" and "must construe the complaint in favor of the complaining party" for purposes of ruling on a motion to dismiss for want of standing at the pleading stage, see Defs. of Wildlife, 504 U.S. 555, 561 (1992); Warth v. Seldin, 422 U.S. 490, 501 (1975); Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011); Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005), Perez nonetheless argues at this pleading stage that Acosta's

allegations of an injury are false.  The Court rejects Perez's argument because Acosta's material allegations of an injury must be accepted as true at this pleading stage.

Insofar as Perez argues that Acosta lacks standing because Acosta's allegations of an injury are "frivolous," Perez's argument is still unavailing.  Perez's reference to Acosta's allegations being "frivolous" hearkens to the Supreme Court's aforementioned rule in Bell v. Hood, 327 U.S. 678, 682-83 (1946), that jurisdictional dismissals, even those at the pleading stage, are permitted in two narrow exceptions: first, "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction," and, second, "where such claim is wholly insubstantial and frivolous."  As for the second exception, which is the exception that Perez advances, a claim is wholly insubstantial and frivolous either "(1) because it is obviously without merit, or (2) because it is clearly foreclosed by previous decisions of the Supreme Court."  Miller v. Stanmore, 636 F.2d 986, 989 (5th Cir. 1981).  See also Gibson v. Office of Atty. Gen., State of California, 561 F.3d 920, 929 (9th Cir. 2009) ("A case may be deemed frivolous only when the result is obvious or the . . . arguments of error are wholly without merit.").  Perez makes no mention of Acosta's claims being clearly foreclosed by previous decisions of the Supreme Court.  Instead, Perez only argues that Acosta's claims are without merit.  But Perez's argument fails because Perez's proffered evidence fails to demonstrate that Acosta's claims are "obviously without merit."  Miller, 636 F.2d at 989.  Consider, for example, that Perez's evidence about the store lacking a restroom fails to prove that a store employee never told Acosta that his wheelchair would not fit in the restroom. Perhaps the employee was referring to the restroom in the neighboring business, which Perez admitted she and her employees use.  Or consider, for example, that Perez's evidence about all flowers being displayed outside the store's entrance on February 13, 2018, fails to prove that Acosta never entered the store.  Perhaps, as Acosta declared, Acosta selected his rose bouquet outside the store's entrance and then entered the store to purchase the flowers or browse through the store.  These considerations demonstrate that although Perez's evidence may create disputed issues of material fact, Perez's evidence fails to prove that Acosta's allegations of disability discrimination at the store are obviously without merit.

1    Finally, as for Perez's contention that Huynh, not Perez, is legally responsible under the

2    lease for the premises outside the store, such as the parking lot, this question of fact does not

3    deprive Acosta of standing.  See, e.g., Davis v. Wells Fargo, 824 F.3d 333, 348-50 (3d Cir. 2016)

4    (stating that the "you've got the wrong party" defense is not a standing issue but is, instead, a

5    merits issue that should be considered under Rule 12(b)(6) or Rule 56).  Additionally, although

6    Perez references the Declaratory Judgment Act in her motion, stating that "[a] declaration by the

7    court as to which party can be held liable for those issues outside the leased premises will allow

8    Plaintiff to seek redress from the proper party(ies)," the Court notes that Perez has not filed a

9    claim for declaratory relief in this lawsuit to date.

10   **E.    Judicial notice.**

11   Perez asks the Court to take judicial notice of the Court's docket.  Specifically, Perez asks

12   the Court to take judicial notice of a "case search" on the Court's docket conducted by Perez "in

13   which Plaintiff, Jose Acosta, is a Plaintiff."  Doc. No. 10-5.  In conjunction with this request,

14   Perez provided the Court with what appears to be a computer search result wherein a party with

15   the name "Acosta" is named as a party in 123 cases on the Court's CM/ECF system.

16   The Court will take judicial notice of its docket, including the fact that a party with the

17   name "Acosta" is named as a party in multiple cases on the Court's docket.  See Fed. R. Evid.

18   201; United States v. Bernal–Obeso, 989 F.2d 331, 333 (9th Cir.1993).  But the Court will not take

19   judicial notice at this time of the fact that the plaintiff is this lawsuit, Jose Acosta, is the same

20   party identified in the 123 other cases on the Court's docket.  That fact may or may not be true, but

21   that fact is not "generally known within the trial court's territorial jurisdiction," nor is that fact

22   "accurately and readily determined from sources" before the Court, such as the search result

23   provided by Perez, "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

### ORDER

25   Accordingly, IT IS HEREBY ORDERED as follows:

26   1.  Perez's Rule 12(b)(1) motion (Doc. No. 10) and Huynh's joinder to Perez's motion (Doc.

27       No. 22) are DENIED;

28   / / /

2.  This case is REFERRED BACK to the assigned magistrate judge for further scheduling and other proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   May 6, 2020

_____
SENIOR  DISTRICT  JUDGE