1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11
12
13
14
15
16

JOSE ACOSTA,

             Plaintiff,

    v.

MARIA DEL CARMEN PARRA PEREZ, et al.,

             Defendants.

Case No.  1:19-cv-01224-AWI-EPG

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART

(ECF No. 58)

<u>FOURTEEN (14) DAY DEADLINE</u>

17
18
19
20
21
22

       Currently before the Court is Plaintiff Jose Acosta's ("Plaintiff") motion for default judgment against Defendants Thu Huynh, Ngoc Tran, and THNBT LLC ("Defendants"). The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(19). For the following reasons, the Court recommends granting the motion in part, with a reduction in the amount of attorneys' fees awarded.

23

**I.     BACKGROUND**

24

    **a.  Procedural History**

25
26
27
28

       Plaintiff filed this action on September 5, 2019, alleging violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq*. and related California law, against Defendants Maria Del Carmen Parra Perez, doing business as Lesly's Gifts and More, Thu Huynh, and Ngoc Tran. (ECF. No. 1) Plaintiff filed a First Amended Complaint as a matter of

1

course pursuant to Federal Rule of Civil Procedure 15(a)(1) on October 16, 2019. (ECF No. 6.) On November 6, 2019, Defendant Perez filed a motion to dismiss the First Amended Complaint for lack of subject matter jurisdiction. (ECF No. 10.)

On November 18, 2019, Plaintiff filed proofs of service stating that Defendants Huynh and Tran were served by substituted service on "Ann Nguyen, Co-Occupant" and copies of the summons and complaint were mailed to them at 2586 Greenrock Road, Milpitas, CA 95035. (ECF Nos. 14, 15.) On December 23, 2019, Defendants Huynh and Tran, appearing through counsel, filed a notice of joinder in Defendant Perez's motion to dismiss. (ECF No. 22.) On May 6, 2020, District Judge Anthony W. Ishii entered an order denying the motion to dismiss. (ECF No. 28.)

On June 16, 2020, after Defendants Huynh and Tran did not file a response to the First Amended Complaint, Plaintiff requested entry of default against them. (ECF No. 32.) On June 22, 2020, the Clerk of Court entered default against Defendants Huynh and Tran. (ECF No. 33.)

On July 16, 2020, Plaintiff and Defendant Perez filed a stipulated request to allow Plaintiff leave to file a Second Amended Complaint, which the Court approved by order entered on July 17, 2020. (ECF Nos. 36, 37.) The Clerk of Court again entered default against Defendants Huynh and Tran on June 22, 2020, pursuant to Plaintiff's request. (ECF Nos. 39, 40.) Plaintiff and Defendant Perez filed a stipulation of dismissal as to Defendant Perez only on August 20, 2020. (ECF Nos. 41, 42.)

On October 20, 2020, Plaintiff filed a motion seeking leave to file a Third Amended Complaint ("TAC") in order to name THNBT LLC ("THNBT") as a defendant. (ECF No. 45.) According to the motion, THNBT is an alter ego of Defendants Huynh and Tran and was created during the pendency of this litigation in an attempt to evade collection on a default judgment by transferring ownership of the property at issue from Defendants Huynh and Tran to THNBT. (*Id*.; see also ECF Nos. 45-2, 45-4.) On February 2, 2021, the Court entered an order granting Plaintiff's motion. (ECF No. 49.)

Plaintiff filed the TAC on February 9, 2021. (ECF No. 50.) On February 18, 2021, Plaintiff filed a proof of service indicating that Defendant THNBT was served through its

1    registered agent, Defendant Huynh. (ECF No. 52.) On March 26, 2021, at Plaintiff's request, the

2    Clerk of Court entered default against Defendant THNBT. (ECF No. 53, 54.)

3         Plaintiff filed the instant motion for default judgment on April 30, 2021. (ECF No. 58.)

4    Plaintiff argues that he is entitled to default judgment against Defendants because the complaint

5    adequately alleges that he is entitled to relief under the ADA. (ECF No. 58-1 at 8-10.)

6    Additionally, Defendants are jointly and severally liable for the ADA violations. (*Id.* at 10.)

7    Plaintiff is entitled to an injunction requiring Defendants to remove all architectural barriers,

8    $4,000.00 in statutory damages, and attorneys' fees and costs in the amount of $25,114.06. (*Id.* at

9    12-20.) Plaintiff argues that this amount should be offset by $4,000.00 to reflect Plaintiff's

10   settlement with Defendant Perez. (*Id.* at 10-12.)

11        Defendants were served with the motion for default judgment but did not file an

12   opposition or otherwise respond to the motion. (*See* ECF No. 58-7.)

13        The Court held a hearing on the motion on June 11, 2021. (ECF Nos. 61, 62.) Counsel

14   Tanya Moore appeared at the hearing on behalf of Plaintiff. (ECF No. 61.) Defendants did not

15   appear at the hearing. (*Id.*) At the hearing, Plaintiff was granted leave to file a supplemental brief

16   addressing issues regarding service of the operative complaint on Defendants Huynh and Tran.

17   (ECF No. 62.)

18        On June 11, 2021, Plaintiff filed a request for entry of default as to Defendants Huynh and

19   Tran due to their failure to respond to the TAC. (ECF No. 60.) On June 15, 2021, pursuant to

20   Plaintiff's request, the Clerk of Court again entered default against Defendants Huynh and Tran.

21   (ECF Nos. 60, 63.)

22        On June 16, 2021, Plaintiff filed supplemental briefing in support of the motion. (ECF No.

23   64.) In his supplemental briefing, Plaintiff argued that Defendants Huynh and Tran were not

24   required to be served with the TAC but were electronically served through their counsel of

25   record. (*Id.* at 1-3.) Defendants Huynh and Tran were also served with the motion for default

26   judgment. (*Id.*) Plaintiff requests an additional $465.50 in attorneys' fees incurred in attending the

27   hearing on the motion and preparing the supplemental briefing. (*Id.*)

28        On July 28, 2021, the Court entered an order permitting Plaintiff to file further

1   supplemental briefing in support of the motion. (ECF No. 65.) Specifically, the Court allowed

2   Plaintiff to file supplemental briefing addressing the factors under *Eitel v. McCool*, 782 F.2d

3   1470, 1471-72 as well as the adequacy of service and the Court's jurisdiction over the subject

4   matter and the parties. (*Id.*) Plaintiff filed further supplemental briefing on August 11, 2021. (ECF

5   No. 66.) Plaintiff requested an additional $909.50 in attorneys' fees incurred in preparing the

6   second supplemental brief, bringing the total amount of attorneys' fees and costs sought to

7   $26,489.06, less an offset of $4,000.00 paid by Defendant Perez. (*Id.*)

8   **II.   LEGAL STANDARDS**

9   　　Federal Rule of Civil Procedure 55 permits the Court to enter default judgment following

10   a defendant's default. *See* Fed. R. Civ. P. 55(b). Rule 55 specifically provides that:

11   (b) Entering a Default Judgment
12   　(1)  By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can
    be made certain by computation, the clerk—on the plaintiff's request, with an
13   affidavit showing the amount due—must enter judgment for that amount and
    costs against a defendant who has been defaulted for not appearing and who is
14   neither a minor nor an incompetent person.
    　(2)  By the Court. In all other cases, the party must apply to the court for a
15   default judgement. A default judgment may be entered against a minor or
    incompetent person only if represented by a general guardian, conservator, or
16   other like fiduciary who has appeared personally or by a representative, that
    person or its representative must be served with written notice of the
17   application at least 7 days before the hearing. The court may conduct hearings
    or make referrals—preserving any federal statutory right to a jury trial—when,
18   to enter or effectuate judgment, it needs to:
    　　(A)  Conduct an accounting;
19   　　(B)  Determine the amount of damages;
20   　　(C)  Establish the truth of any allegation by evidence; or
    　　(D)  Investigate any other matter.
21

22   Fed. R. Civ. P. 55(b).

23   　　Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs*,

24   792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit has enumerated the following factors

25   (collectively, the *Eitel* factors) that a court may consider in determining whether to grant default

26   judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

27   substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

28   action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

4

to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys.*, 826 F.2d at 917–18 (9th Cir. 1987). Therefore, the plaintiff is required to provide proof of all damages sought in the complaint.

In addition, before awarding a default judgment against a defendant, the Court must determine the adequacy of service of process, as well as the Court's jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."); *cf. S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007) ("We review de novo whether default judgment is void because of lack of personal jurisdiction due to insufficient service of process.").

## III.   DISCUSSION

The Court first addresses its subject matter jurisdiction for entering default judgment as well as adequacy of service of process. The Court will then examine the *Eitel* factors and the terms of the proposed judgment.

### A.   Jurisdiction

#### 1.   Subject Matter Jurisdiction

The Court finds that it has subject matter jurisdiction over this suit. Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983) (citations omitted)).

Here, Plaintiff alleges a cause of action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. The Court has federal question jurisdiction over this claim under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the related causes of action under California's Unruh Civil Rights Act California Health and Safety Code § 19953. *See* U.S.C. § 1967.

2.   Service of Process

*Defendants Huynh and Tran*

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States.  An individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

California law, in turn, permits substituted service upon an individual by:

> leaving a copy of the summons and complaint . . . at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail.

Cal. Code Civ. P. § 415.20(a).  Further,

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode . . . or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge of his or her . . . usual mailing address . . ., at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. P. § 415.20(b).

6

According to the proofs of service Plaintiff filed, Defendants Huynh and Tran were served by leaving copies of the summons and complaint at 2586 Greenrock Road, Milpitas, CA 95035[1] with "co-occupant" Ann Nguyen on October 22, 20219, and by mailing copies of the summons and complaint on October 23, 20219. (ECF Nos. 14, 15.) The process server's declaration states that he had previously attempted service on Defendants Huynh and Tran seven times and, when he served Ann Nugyen, he was informed that Defendants Huynh and Tran were not in. (*Id.*) Defendants Huynh and Tran appeared through counsel, filed a notice of joinder in Defendant Perez's motion to dismiss, and their counsel was electronically served with the SAC and TAC.[2] (ECF Nos. 22, 38, ECF No. 50.) Accordingly, the Court finds that Plaintiff properly served Defendants Huynh and Tran.

*Defendant THNBT*

Pursuant to Rule 4, unless federal law provides otherwise, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served in a judicial district of the United States in the manner prescribed by Rule 4(e)(1) for serving an individual, or by delivering copies of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, and, if the agent is one authorized by statute and the statute so requires, by also mailing a copy of each to the defendant. Fed. R. Civ. P. 4(h).

California Code of Civil Procedure section 416.40 provides that a summons may be served on an unincorporated association that is not a general or limited partnership by delivering a

---

[1] In support of the motion, Plaintiff's counsel submits a declaration attaching what he describes as a grant deed establishing Defendant Huynh and Tran's ownership of the underlying property at issue in this case. (*See* Moore Decl., ECF Nos. 58-2 at 2, 58-3 at 2.) The return address for "Mr. and Mrs. Thu Huynh" is listed as 2586 Greenrock Road, Milpitas, CA 94035. (ECF No. 58-3 at 2.) Plaintiff's counsel also attaches a grant deed from Defendants Huynh and Tran to THNBT, which directs tax statements to be mailed to Defendant THNBT to the attention of Defendant Huynh at 2586 Greenrock Road, Milpitas, CA 95035. (ECF No. 58-3 at 5.) Finally, Plaintiff's counsel attaches a Statement of Information for THNBT filed with the California Secretary of State listing Defendant Huynh's address and Defendant THNBT's business address as 2586 Greenrock Road, Milpitas, CA 95035. (ECF No. 58-3 at 8.) Additionally, Plaintiff has confirmed via the LexisNexis public records database that Defendant Tran shares the same address. (ECF No. 66 at 5.)

[2] Notably, as Plaintiff points out in his supplemental briefing, "[n]o service is required on a party who is in default for failing to appear," except that "a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). (*See* ECF No. 64.) Nonetheless, Defendants Huynh and Tran were served with the TAC and SAC and failed to respond to those pleadings or otherwise participate in the action.

copy of the summons and complaint to the person designated as agent for service of process in a statement filed with the Secretary of State. Cal. Code Civ. P. 416.40(b).

Here, Plaintiff's counsel submits a copy of THNBT's Statement of Information filed with the California Secretary of State. (Moore Decl., ECF No. 58-2 at 2.) The Statement of Information lists Thu Huynh as the sole manager or member and the agent for service of process. (*Id.*) Plaintiff filed a proof of service stating that the summons and TAC were served on Defendant THNBT on February 14, 2021 by delivering copies to Thu Huynh's registered agent at 2586 Greenrock Road, Milpitas, CA 95035. (ECF No. 52.) The Court therefore finds that Plaintiff properly served Defendant THNBT.

### B. *Eitel* Factors

#### 1. Prejudice to Plaintiff

Plaintiff argues that he will be prejudiced if judgment is not entered because Defendants Huynh and Tran have already attempted to evade judgment by transferring ownership of the property to Defendant THNBT. (ECF No. 66 at 2.) The primary goal of Plaintiff's lawsuit is to make the property accessible to him. (*Id.*) Without an injunction requiring the removal of barriers to Plaintiff's access, for which Defendants Huynh, Tran, and THNBT are responsible as landlords of the property, Plaintiff will have no other legal remedy. (*Id.*)

The Court agrees that Plaintiff will be prejudiced if a default judgment is not granted. Plaintiff filed this lawsuit on September 5, 2019. (*See* ECF No. 1.) If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not defend this action. Accordingly, this *Eitel* factor weighs in favor of default judgment.

#### 2. Substantive Merits and Sufficiency of Complaint

"The second and third *Eitel* factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. It is appropriate for the court to analyze these two factors together." *Arroyo v. J.S.T. LLC*, 2019 WL 4877573 at *6 (E.D. Cal. Oct. 3, 2019) (citations omitted). The Court, then, examines the complaint to determine whether it states a claim for the relief sought.

\\\

*Americans with Disabilities Act*

Plaintiff alleges that Defendants violated his rights under Title III of the ADA. (ECF No. 50 at 5-7.) "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations because of [his] disability." *Molski v. MJ. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b). The ADA defines discrimination to include "a failure to remove architectural barriers,…in existing facilities,…where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To state a claim for discrimination under the ADA because of "the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.'" *Hubbard v. 7-Eleven*, Inc., 433 F.Supp.2d 1134, 1138 (S.D. Cal. 2006) (quoting *Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1085 (D. Haw. 2000)).

Plaintiff alleges that he is substantially limited in his ability to walk and must use a wheelchair for mobility. (ECF No. 50 at 2.) The ADA defines disability to include substantial limitations upon an ability to walk. *See* 42 U.S.C. § 12102. Taking Plaintiff's allegations as true for purposes of this motion, Plaintiff has adequately established disability under the ADA.

Plaintiff also alleges that the subject facility is a public accommodation and that he went there to buy roses. (ECF No. 50 at 2.) The ADA defines sales establishments as public accommodations. *See* 42 U.S.C. § 12181(7)(E). Plaintiff also alleges that each Defendant either owns, leases, or operates the public accommodation. (ECF No. 50 at 2.) Again, such allegations are accepted as true for purposes of this default judgment motion.

Next, Plaintiff must demonstrate that he was denied public accommodations due to his disability. Under the ADA, the Attorney General is responsible for promulgating the implementing regulations for Title III. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  In *Fortyune*, the Ninth Circuit examined the history of ADA implementing regulations related to public accommodation accessibility:

> Congress further provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board ("the Access Board"). *See* 42 U.S.C. § 12186(c). The Access Board provided a notice and comment period for its proposed ADA guidelines in 1991, *see* 56 Fed.Reg.  2296-01 (Jan. 22, 1991), and issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") later that year. *See* 56 Fed.Reg. 35,408 (July 26, 1991) (codified at 36 C.F.R. Pt. 36, App. A.) These standards lay out the technical structural requirements of places of public accommodation and are applicable "during the design, construction, and alteration of such buildings and facilities…under the [ADA]." *See id.* App. A, § 1.

*Id.* at 1080-81.[3] The Ninth Circuit has stated that the ADAAG guidelines provide the "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citations omitted).

Here, Plaintiff alleges that he encountered the following barriers during his visit to the subject facility on February 13, 2018, which deviated from the ADAAG:

> a) Plaintiff could not locate any accessible parking in the Facility's parking lot. He had to park in a standard parking stall, which lacked an access aisle, and it was difficult for him to get out of his vehicle and into his wheelchair because there were cars parked on either side of him.
>
> b) Plaintiff was not able to find a ramp to the sidewalk leading towards the Facility entrance. Plaintiff's son had to help him wheel over the curb, which was difficult and dangerous.
>
> c) The transaction counter was too high and the surface was obstructed, which made it hard for Plaintiff to reach over the counter and pay.
>
> d) The aisles inside the Facility lacked sufficient clear width for Plaintiff's wheelchair to fit through, which made it difficult for him to browse the store.
>
> e) Plaintiff needed to use the restroom to empty his catheter bag while at the Facility, but was told by the employee that his wheelchair "wouldn't fit." He could not enter the restroom and had to wait to empty his catheter bag until later, which was uncomfortable.

(ECF No. 50 at 3.)

Plaintiff also alleges that the following additional barriers were identified by his Certified

---

[3] The term "1991 Standards refers to the ADAAG guidelines originally published on July 26, 1991, and republic as Appendix D to 28 CFR part 36. As Plaintiff correctly observes, in 2012, new federal accessibility standards for alterations and new construction went into effect, known as the 2010 ADA Standards for Accessible Design ("2010 Standards"). 28 C.F.R. § 35.151.

Access Specialist consultant after the action was filed:[4]

> a) There is not a properly configured and identified accessible route of travel from the public sidewalk to the Facility entrance.
>
> . . .
>
> c) An insufficient number of designated accessible parking stalls are provided based upon the total number of parking stalls in the parking lot, and the sole designated accessible parking stall provided is not centrally located to serve the entrances of all businesses within the shopping center.
>
> d) The designated accessible parking stall lacks a properly configured and identified access aisle. e) The designated accessible parking stall is improperly configured and contains excessive slopes. f) The walkway connecting the Facility entrance to the designated accessible parking and entrances to other businesses within the shopping center, within which walkway sales are also conducted, contains excessive cross slopes and openings in the walking surface.
>
> g) The required exterior maneuvering clearances at the Facility entrance contain excessive slopes and gaps in the walking surface, and are obstructed.

(ECF No. 50 at 3-4.)

Plaintiff is correct that, under the ADAAG standards, public accommodations must offer accessible parking stalls, accessible sales and service counters, minimum wheelchair passage width, accessible restrooms, and accessible routes of travel. *See* 28 C.F.R., Part 36, App. D. §§ 4.1.2, 4.1.5, 4.2.1, 4.6.1-4.6.6, 4.16, 7.2; 36 C.F.R., Part 1191, App. D §§ 403.5, 603.1-603.4, 904.1-904.6; 36 C.F.R., Part 1191, App. B §§ 206.2.1, 208.2, 208.3. There must be a certain number of designated accessible parking stalls based on the total number of parking stalls available, accessible parking spaces must be centrally located, and they must have an identifiable access aisle, be properly configured, and not have excessive slopes. 28 C.F.R., Part 36, App. D §§ 4.1.2(5), 4.6.2, 4.6.3; 26 C.F.R., Part 1191, App. D §§ 502.2-502.4; 26 C.F.R., Part 1191, App. B § 208.2-208.3. Accessible routes must be properly configured, cannot contain excessive slopes, 28 C.F.R., Part 36, App. D § 4.3.7; 26 C.F.R., Part 1191, App. D § 403. Maneuvering clearances at doors must be level and clear. 28 C.F.R., Part 36, App. D, § 4.13.6; 26 C.F.R., Part 1191, App. D § 404.2.4. Accordingly, Plaintiff has alleged violations of the ADAAG and architectural barriers under the ADA. These allegations are taken as true for purposes of this motion.

---

[4] The TAC alleged additional barriers discovered by Plaintiff's consultant that Plaintiff indicates were resolved in the settlement with Defendant Perez. (ECF No. 58-1 at 14.) Plaintiff's motion also states that he waives his claim related to proper tow-away signage alleged in the TAC. (*Id.* at 15.)

1    The Court must also determine that removal of the architectural barriers is readily

2    achievable. Removal of an architectural barrier is "readily achievable" if it is "easily

3    accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. §

4    12181(9). The Ninth Circuit has held that an ADA plaintiff "ha[s] the initial burden at summary

5    judgment of *plausibly showing* that the cost of removing an architectural barrier does not exceed

6    the benefits under the particular circumstances." *Lopez v. Catalina Channel Express, Inc.,* 974

7    F.3d 1030, 1034-35 (9th Cir. 2020) (emphasis in original).

8    Plaintiff argues that whether removal  of the barriers are readily achievable is an

9    affirmative defense that is waived unless raised. (ECF No. 58-1 at 9-10.) Because Defendants

10    have not answered the complaint, the defense is waived here. (*Id.*) In his second supplemental

11    briefing, Plaintiff argues that the injunctive relief he seeks is plausibly readily achievable and,

12    because Defendants have chosen not to respond to the lawsuit, Plaintiff has not been able to

13    conduct discovery that could be used to estimate the cost of the requested work. (ECF No. 66 at

14    4.) Additionally, other courts have observed that barrier removal examples identified by federal

15    regulations, such as those sought by Plaintiff, are readily achievable. (*Id.*)

16    The TAC alleges that removal of the architectural barriers at the subject facility is readily

17    achievable. Defendants have not contradicted these or any other allegations of the TAC despite

18    Defendants Huynh and Tran knowing of and appearing in this case. Accepting the allegations of

19    the TAC as true, the Court finds this is sufficient to establish that removal of the architectural

20    barriers at issue is readily achievable for purposes of default judgment. *See Vogel v. Rite Aid*

21    *Corp.*, 992 F.Supp. 2d 998, 1011 (C.D. Cal. 2014) (finding that allegation that removal of barrier

22    readily achievable is sufficient for purposes of default judgment); *Johnson v. Hall*, 2012 WL

23    1604715 at *3 (E.D. Cal. May 7, 2012) (same). "Defendants have failed to meet their burden

24    because they have failed to appear and present any defense in this matter." *Arroyo*, 2019 WL

25    4877573 at *10 (finding that the plaintiff in a default judgment proceeding adequately

26    demonstrated removal of barriers was readily achievable when he alleged same and the

27    defendants failed to appear).

28    Accordingly, the Court finds that the second and third *Eitel* factors support default

1   judgment as to Plaintiff's ADA claim.

2   *Unruh Civil Rights Act*[5]

3       Plaintiff also brings a cause of action under California's Unruh Civil Rights Act, which

4   provides in pertinent part that "[a]ll persons within the jurisdiction of this state are free and equal,

5   and no matter what their…disability…are entitled to the full and equal accommodations,

6   advantages, facilities, privileges, or services in all business establishments of every kind

7   whatsoever." C.C.P. § 51(a).  "Unlike the ADA, the Unruh Act permits the recovery of monetary

8   damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000 per

9   violation." *Arroyo*, 2019 WL 4877573 at *10 (citing C.C.P. § 52(a)). A violation of the ADA also

10  constitutes a violation of the Unruh Act. C.C.P. § 54.1(d) ("A violation of the right of an

11  individual under the Americans with Disabilities Act of 1990…also constitutes a violation of this

12  section.").

13      The Court has already found that Plaintiff adequately demonstrated a violation of the

14  ADA for purposes of default judgment; thus, Plaintiff has adequately demonstrated a violation of

15  the Unruh Act as well. *See Vogel*, 992 F.Supp.2d at 1011-12 ("A violation of the ADA

16  necessarily violates the Unruh Act . . . and, although required if not based on an ADA violation,

17  'no showing of intentional discrimination is required where the Unruh Act violation is premised

18  on an ADA violation."); *Villegas v. Beverly Corner, LLC*, 2017 WL 3605345 at *5 (C.D. Cal.

19  Aug. 18, 2017). Therefore, the Court finds that second and third *Eitel* factors support default

20  judgment here.

21          3.  Sum of Money in Relation to Seriousness of Conduct

22      Next, the Court considers the sum of money at stake in the action, with a lower sum

23  supporting default judgment. *See G & G Closed Circuit Events*, *LLC v. Nguyen*, 3:11-cv-06340-

24

25  ———————————
    [5] Plaintiff's TAC also references a cause of action under California's Health and Safety Code §19953. However,
    Plaintiff's brief does not reference this cause of action. Thus, to the extent such a claim is alleged, the Court finds that

26  Plaintiff has failed to demonstrate entitlement to a default judgment. *See S.A. ex rel. L.A. v. Exeter Union School
    Dist.*, 1:09-cv-00834, 2009 WL 1953462 at *8 (E.D. Cal. July 7, 2009) ("When seeking a default judgment, a

27  plaintiff should provide the Court with points and authorities containing citations to authority showing that the
    plaintiff's claim or claims include allegations of all the necessary elements required for entitlement to relief. It is the
    parties' burden to demonstrate to the Court that under the pertinent law, the plaintiff's claims, as alleged, are legally

28  sufficient.").

                                            13

JW, 2012 WL 2339699 at *2 (N.D. Cal. May 30, 2012); *PepsiCo Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002) ("Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").

Here, Plaintiff seeks $4,000.00 in statutory fees and $25,579.56 in attorneys' fees in costs, less an offset of $4,000.00 paid by Defendant Perez in settlement. (ECF Nos. 58, 64.) As discussed below, the Court will recommend that the amount of attorneys' fees awarded be reduced. In light of that reduction and the circumstances of the case, the Court does not find these amounts to be excessive. While the sum is substantial, Defendants' conduct is serious and involves discrimination based upon disability. Accordingly, the Court finds that the third *Eitel* factor weighs in favor of default judgment.

### 4. Possibility of Dispute

No genuine issue of material fact is likely to exist. Plaintiff has adequately alleged violations of the ADA and Unruh Act, and those allegations are taken as true. *Televideo Sys.*, 826 F.2d at 917-18. Defendants have not contradicted the well-pleaded allegations of the operative complaint despite Defendants Huynh and Trans' appearance in and knowledge of this case. Accordingly, the Court finds that this factor favors entry of default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The Court finds that the default in this matter was not due to excusable neglect. Defendants were adequately served with notice of the complaint, as well as this motion, and failed to respond. Defendants Huynh and Tran are aware of this action and appeared through counsel in order to join in Defendant Perez's motion to dismiss the First Amended Complaint but then failed to file an answer or otherwise meaningfully participate in this case.

Accordingly, the Court finds that this *Eitel* factor weighs in favor of granting default judgment against Defendants Nuynh, Tran, and THNBT.

### 6. Policy Favoring Decision on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the defendant's

failure to appear has made a decision on the merits impossible at this juncture. *Arroyo,* 2019 WL 4877573, at *11.

Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the Court finds the policy favoring decisions on the merit does not preclude entering default judgment against Defendants Huynh, Tran, and THNBT under these circumstances.

In light of the above findings regarding the *Eitel* factors, the Court recommends granting default judgment in favor of Plaintiff and against Defendants Huynh, Tran, and THNBT.

### C. Terms of Judgment

#### 1. Statutory Damages

Plaintiff seeks statutory damages of $4,000.00 in accordance with the Unruh California Civil Rights Act, which provides for minimum statutory damages of $4,000.00 for each violation. C.C.P. § 52(a). "Under the Unruh Act, statutory damages may be recovered if a violation of one or more construction related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." *Arroyo*, 2019 WL 4877573 at *12 (citing C.C.P. § 55.56(a)). A litigant need not prove actual damages to recover statutory damages under the California Unruh Civil Rights Act.

Here, the Court finds that Plaintiff has adequately established violations of the ADA for purposes of this default judgment motion, which, in turn, establish violations of California's Unruh Civil Rights Act. Therefore, Plaintiff is entitled to recover statutory damages in the amount of $4,000.00.

#### 2. Injunctive Relief

Plaintiff seeks injunctive relief. Specifically, Plaintiff seeks an injunction compelling

Defendants Huynh, Tran, and THNBT to comply with the ADA and the California Unruh Civil Rights Act by removing the barriers identified in the TAC. Pursuant to the ADA, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA. 42 U.S.C. § 12188(a)(2). Under federal and state law, Plaintiff is entitled to an injunction requiring Defendants Huynh, Tran, and THNBT to remove the architectural barriers that he encountered during his visit to the subject facility that violated the ADA. *See Arroyo*, 2019 WL 4877573 at *12 (recommending injunctive relief under similar circumstances where the plaintiff alleged non-compliance with the ADA due to obstructed paths of travel at the subject property). Thus, an injunction should issue commanding Defendants Huyn, Tran, and THNBT to provide accessible parking stalls, accessible sales and service counters, minimum wheelchair passage width, accessible restrooms, and accessible routes of travel, and to maintain the required maneuvering clearances at the subject facility.

### 3.   Attorneys' Fees and Costs

The party that prevails on a claim under the ADA may recover "a reasonable attorney's fee, including litigation expenses," at the Court's discretion. "[U]nder the federal fee shifting statutes the lodestar amount is the guiding light in determining a reasonable fee." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuations and citations omitted). "The 'lodestar' amount is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citations omitted). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

As to the reasonable hourly rate, reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993).

Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).

The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.' " *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary. *Garybo,* 2020 WL 2765561, at *15 (citations omitted). "[M]any courts have...reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc*., 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013); *Mogck v. Unum Life Ins. Co. of Am*., 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) (reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"; *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ("communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate[.]").

The Supreme Court  has determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Thus, courts have discounted billing entries for "clerical tasks" such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Garybo v. Bros.,* 2020 WL 2765561, at *15 (E.D. Cal. May 28, 2020) (discounting fee award for time spent calendaring deadlines, downloading documents, uploading documents, filing, and organizing exhibits);  *L.H. v. Schwarzenegger,* 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009) (finding organizing and updating files were clerical tasks, and declining to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal"); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying").

///

### a. Reasonable Hourly Rate

The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). Additionally, the fee applicant "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984); *Schwarz v. Secretary of Health and Human Servs.,* 73 F.3d 895, 908 (9th Cir.1995). Accordingly, Plaintiff has the burden to establish that the proposed rates are reasonable in the Eastern District of California, Fresno area. *See Mendenhall v. NTSB,* 213 F.3d 464, 471 n. 5 (9th Cir. 2000), *amended on denial of reh'g* (July 10, 200), and *overruled on other grounds by Gonzalez v. Arizona,* 677 F.3d 383 (9th Cir. 2012) ("Under Ninth Circuit caselaw, . . . the relevant legal community is the 'forum district.'") (citation omitted).

Here, Plaintiff seeks attorney fees for one attorney, Tanya E. Moore, and two paralegals, Whitney Law and Isaac Medrano. (ECF No. 58-1 at 16-18.) Plaintiff proposes $300.00 per hour as a reasonable hourly rate for Ms. Moore and $115.00 per hour as a reasonable hourly rate for each paralegal. (*Id.* at 17.) In support, Plaintiff states that Ms. Moore has been practicing law for over twenty years and Ms. Law and Mr. Medrano both have more than ten years of experience. (*Id.* at 17-18.) Plaintiff submits declarations from Ms. Moore, Ms. Law, and Mr. Medrano regarding their respective responsibilities and professional experience. (ECF Nos. 58-2, 58-4, 58-5.) Additionally, Plaintiff contends that other courts in this district have found these billing rates to be reasonable.[6] (ECF No. 58-1.) District Judge Anthony W. Ishii has also surveyed prevailing rates in this district and found that reasonable hourly rates in the Fresno Division are between $175 and $380, depending on the attorney's experience and expertise, with $300 being the upper range for attorneys with 10 years or less experience. (*Id.* at 18.) Judge Ishii also found that the

---

[6] In support of his contention that courts in this district have found the proposed rates to be reasonable, Plaintiff cites to some cases from the Sacramento Division. However, the relevant forum for purposes of evaluating the reasonableness of the proposed rates is the Fresno Division. *Jadwin v. County of Kern,* 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011). Nonetheless, courts in the Fresno Division have also found that these billing rates are reasonable for Ms. Moore and Ms. Law. *See, e.g., Blocks v. Starbucks Corp.,* 2018 WL 4352906 at *7-8 (E.D. Cal. Sept. 11, 2018) (finding identical rates for Ms. Moore and Ms. Law to be reasonable); *Trujillo v. Singh,* 2017 WL 1831941 at *2, 2017 LEXIS 70092 at *3 (E.D. Cal. May 8, 2017) (same); *Acosta v. Martinez,* 2020 WL 1026890 (E.D. Cal. Mar. 3, 2020) (same).

reasonable hourly rate for paralegal work in the Fresno Division ranges from $150, depending on experience. (*Id.*)

Having reviewed the declarations of Ms. Moore, Ms. Law, and Mr. Medrano, Plaintiff's proposed rates are consistent with the rates of comparable lawyers and paralegals in the Fresno Division. The Court therefore finds that the rates sought for Plaintiff's counsel and paralegals are reasonable.

### b.  Hours Reasonably Expended

The Court turns to the second part of the lodestar analysis, the hours reasonably expended. According to the declarations in support of the motion, Ms. Moore spent a total of 58.7 hours on this matter, including 0.9 hours spent attending the hearing on the motion for default judgment and preparing the first  supplemental brief and an additional hour spent preparing the second supplemental brief. (ECF Nos. 58-2 at 3, 64-1 at 2, 66-1 at 2.) Ms. Law spent a total of 44.1 hours on this matter, including 1.7 hours spent preparing the supplemental brief and 5.3 hours spent preparing the second supplemental brief. (ECF Nos. 58-4 at 2, 62-1 at 2, 66-1 at 2.) Mr. Medrano spent a total of 10.4 hours on this matter. (ECF No. 58-5.)

The amount of time spent on this case exceeds amounts typically spent on cases of this nature. *See, e.g., Johnson v. Top Inv. Prop. LLC,* 2018 WL 3993419, at *10 (E.D. Cal. Aug. 17, 2018) (11.6 hours expended through default judgment in an ADA case); *Trujillo v. Ali*, 2016 WL 6902313, at *10 (E.D. Cal. Nov. 23, 2016) (roughly 25 hours expended through filing of motion for default judgment in ADA case); *Johnson v. Lababedy*, 2016 WL 4087061, at *11 (E.D. Cal. Aug. 2, 2016) (9.2 hours expended through filing of motion for default judgment in ADA case); *Loskot v. D & K Spirits, LLC*, 2011 WL 567364, at *4 (E.D. Cal. Feb. 15, 2011) (17.3 hours expended through filing of motion for default judgment in ADA case).

Much of the difference between this action and routine ADA cases that proceed to a motion for default judgment can be explained by the fact that the defendants in this action initially appeared and defended, forcing Plaintiff's counsel to expend time litigating this case and achieving a settlement with Defendant Perez.  Additionally, as Plaintiff notes, the transfer of property from Defendants Huynh and Tran to Defendant TNBT necessitated a motion to amend

the complaint. (*See* ECF no. 58-1 at 18-19.) The Court finds that the majority of Plaintiff's counsel's time was reasonable spent.

However, Ms. Moore, Ms. Law, and Mr. Medrano also frequently billed for internal communications and interoffice conferences. (*See* ECF No. 58-3 at 10-24.) Specifically, the billing records contain at least thirty-two entries from Ms. Moore, fifteen entries from Ms. Law, and one entry from Mr. Medrano consisting of interoffice communications. (*See id.*) This volume of entries indicates that an inordinate amount of time was spent on interoffice conferences, making a reduction in hours appropriate. Notably, the internal communication entries were frequently block billed, making it difficult to determine the amount of time each attorney and paralegal spent on each activity. Therefore, the Court will recommend across-the-board percentage cuts to reflect a reduction of time spent on interoffice conferences. *See Gonzalez v. City of Maywood,* 729 F.3d 1196, 1203 (9th Cir. 2013) (" '[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application.'") (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992)); *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2000) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."). Specifically, the Court will recommend a reduction of Ms. Moore's time by 5.8 hours, Ms. Law's time by 2.2 hours, and Mr. Medrano's time by .01 hour, representing a reduction of requested fees by ten percent, five percent, and one percent, respectively.

Additionally, Ms. Law and Mr. Medrano spent time on tasks that appear to be purely clerical or secretarial in nature. Ms. Law spent a total of .7 hours on tasks such as opening a new matter, performing a conflict check, and calendaring deadlines, as well as an unknown portion of a 2.3-hour entry spent compiling exhibits and creating tables of contents and authorities for the motion for default judgment. (ECF No. 58-3 at 10, 20-21, 24.) Mr. Medrano spent a total of 3.4 hours on clerical tasks, including drafting proofs of service and calendaring deadlines. (*Id.* at 10, 13, 15-17, 19, 22-23.) The Court will therefore recommend a further reduction in Ms. Law's time

20

1    by .9 hours[7] and Mr. Medrano's time by 3.4 hours.

2         Further, Ms. Moore spent 2.5 hours and Ms. Law spent 7.4 hours preparing the motion for

3    default judgment and supporting documents. (ECF No. 58-3 at 24.) Other judges in this District

4    have reduced Ms. Moore's time spent in preparing motions for default judgment where the

5    motion filed is nearly identical to motions for default filed by Ms. Moore in other actions. *See*

6    *Trujillo,* 2016 WL 6902313, at *7 (finding one hour each of Ms. Moore and her paralegal's time

7    was sufficient to prepare a motion for default judgment); *Gutierrez v. Leng*, 2015 WL 1498813, at

8    *9 (E.D. Cal. Mar. 31, 2015) (same); *Moore v. E-Z-N-Quick*, No. 1:13-cv-01522-LJO-SAB, 2014

9    WL 1665034 (E.D. Cal. Apr. 24, 2014)). Here, while there were some unique issues to this case,

10   much of Plaintiff's motion for default judgment was similar to a typical motion for default

11   judgment in such a case. Additionally, Plaintiff failed to address the *Eitel* factors, adequacy of

12   service, and the Court's jurisdiction over the subject matter and the parties in his initial briefing,

13   necessitating supplemental briefing. The Court thus finds that two hours of Ms. Moore and three

14   hours of Ms. Law's time is a reasonable expenditure for preparing the underlying motion. The

15   Court therefore recommends a further reduction in time of .5 hours for Ms. Moore and 4.4 hours

16   for Ms. Law.

17        Finally, Ms. Moore and Ms. Law spent a total of 1.9 hours and 7 hours, respectively,

18   preparing Plaintiff's two supplemental briefs. (ECF Nos. 64-1, 66-1.) However, many of the

19   issues that the Court allowed Plaintiff to address through his second supplemental briefing were

20   issues that should have been addressed in the initial motion. For example, the *Eitel* factors, the

21   adequacy of service, and the Court's jurisdiction over the subject matter and the parties are

22   common issues that must be addressed by the courts in ruling on motions for default judgment.

23   Therefore, while the Court finds that the total amount of time spent on the second supplemental

24   brief was not entirely reasonable. The Court will recommend a further reduction of .5 hours to

25   Ms. Moore's time and 3.5 hours to Ms. Law's time, representing the amount of time spent

26   preparing the second supplemental brief that the Court finds to be unreasonable.

27   ───────────────
[7] This amount includes a reduction of .2 hours, reflecting approximately ten percent of the 2.3-hour block billing
28   entry for preparation of the motion for default judgment that included compilation of exhibits and preparation of
     tables. (*See* ECF No. 58-3 at 24.)

Accordingly, the Court's recommended lodestar figures are as follows:

| Name | Hours | Hourly Rate | Total |
|------|-------|-------------|-------|
| Tanya E. Moore | 51.9 | $300.00 | $15,570.00 |
| Whitney Law | 33.1 | $115.00 | $3,806.50 |
| Isaac Medrano | 6.9 | $95.00 | $793.50 |

Thus, the total amount of recommended attorneys' fees is $20,169.50.

### c.   Costs

Plaintiff also seeks recovery of $2,611.06 in costs. Under the ADA, a district court, in its discretion, can allow the prevailing party other than the United States to recover reasonable attorneys' fees, including litigation expenses and costs. 42 U.S.C. § 12205. The costs Plaintiff seeks to recover include $333.10 in fees for service of the summons, $400 for the filing fee, $212.96 for a consultant to perform a pre-filing inspection, $1,295.00 for a Certified Access Specialist consultant and report, and $370.00 for a consultant's declaration in support of Plaintiff's opposition to the motion to dismiss. (ECF No. 58-2 at 4-5.) *See Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011) (explaining "filing fees, mediator fees ..., ground transportation, copy charges, computer research, and database expert fees" are typically identified as litigation costs); *Kraus v. Ding Chaun Chen,* 2021 WL 856425, at *5 (E.D. Cal. Mar. 8, 2021), *report and recommendation adopted*,  2021 WL 1388495 (E.D. Cal. Apr. 13, 2021) (finding court filing fees, costs of service, and an expert witness investigator fee to be compensable expenses). The Court finds that these expenses are reasonable and recommends that $2,611.06 in costs be awarded to Plaintiff.

### 4.   Joint and Several Liability and Offset

In general, under both federal and California state law, liability among defendants for a successful plaintiff's attorneys' fees is generally joint and several. *Trujillo*, 2016 WL 6902313, at *8 (citing cases). The ADA prohibits discrimination by "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA hold a landlord and a tenant liable for noncompliance with the Act. *Botosan*, 216 F.3d at 832.

Here, Plaintiff asserts that Defendants Huynh, Tran, and THNBT own, operate, and/or

lease the subject property. (ECF No. 50 at 2.) According to the motion, these Defendants are the landlords of the subject property and Defendant Perez was the tenant. (*See* ECF No. 58-1.) As such, liability for failure to comply with the ADA is joint and several. *Trujillo*, 2016 WL 6902313, at *9 (holding landlord and tenant jointly and severally liable for amounts awarded in default judgment). To the extent the various defendants had an agreement to allocate responsibility for compliance with the lease–of which there is no evidence before the Court–each Defendant still remains responsible for ADA compliance. *Id.*

Plaintiff previously settled with Defendant Perez, who "asserted that she lacked control over many of the physical barriers present at the Facility." (ECF No. 58-1 at 11.) However, because the defendants are jointly and severally liable for damages and fees awarded under the ADA, it is appropriate to award damages and attorneys' fees against Defendants Huynh, Tran, and THNBT, even though Defendant Perez has settled separately with Plaintiff. Furthermore, no apportionment of the attorneys' fees has been sought as Defendants Huynh, Tran, and THNBT have defaulted and have not opposed Plaintiff's motion for default judgment.

Additionally, courts have awarded attorneys' fees against one defendant for the plaintiff's counsel's time spent litigating against another defendant. *See, e.g., Trujiullo,* 2016 WL 6902313, at *9; *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010) (citing *Californians for Responsible Toxic Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 979 (1989)). Thus, in recommending an award of attorneys' fees against Defendants Huynh, Tran, and THNBT, the Court finds no basis to apportion the fees for Plaintiff's counsel's work spent litigating against these defendants only.

Finally, Plaintiff has requested that the damages and fees against Defendants Huynh, Tran, and THNBT be offset by the $4,000.00 settlement amount paid by Defendant Perez. (*See* ECF No. 58-1 at 10-12.) Such an offset is appropriate where there is joint and several liability, and an offset of $4,000.00 is recommended. *See Velez v. Roche*, 335 F. Supp. 2d 1022, 1042-43 (N.D. Cal. 2004) (offset may be awarded where settlement and award against which offset is sought were (1) for the same injury and (2) the injury is indivisible such that there is joint and several liability among the settling and non-settling defendants) (citations omitted).

\\\

\\\

**IV.    CONCLUSION AND RECOMMENDATION**

In light of the foregoing, it is HEREBY RECOMMENDED that:

1.  Plaintiff's motion for default judgment (ECF No. 58) be GRANTED as follows;

2.  Judgment be entered in favor of Plaintiff Jose Acosta and against Defendants Thu Huynh, Ngoc Tran, and THNBT LLC;

3.  Defendants Thu Huynh, Ngoc Tran, and THNBT LLC be directed, within six (6) months of the date of an order adopting these findings and recommendations, to make the real property known as Lesly's Gifts and More, located at 3263 East Ventura Avenue, Fresno, California (the "Facility") accessible to Plaintiff by making the following modifications to the property such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, as follows:

    a.  Provide a properly configured accessible route of travel from the public sidewalk to the Facility entrance;

    b.  Provide at least one properly configured, and identified accessible parking stall with adjacent access aisle, which shall be centrally located to serve the entrances of all businesses within the shopping center;

    c.  Provide a properly configured accessible route of travel from the designated accessible parking to the Facility entrance and entrances to other businesses within the shopping center;

    d.  Provide and maintain the required exterior maneuvering clearances at the Facility entrance free of excessive slopes and gaps in the walking surface, and unobstructed; and

4.  Plaintiff be awarded statutory damages under the Unruh Act in the amount of $4,000.00, payable by Defendants Thu Huynh, Ngoc Tran, and THNBT LLC, jointly and severally;

5.  Plaintiff be awarded his attorneys' fees and costs in the amount of $16,169.50, reflecting an award of $20,169.50 less an offset of $4,000 from the settlement with Defendant Perez, and costs in the amount of $2,611.06, payable by Thu Huynh, Ngoc

1     Tran, and THNBT LLC, jointly and severally to the Moore Law Firm, P.C. Trust

2     Account and delivered to the Moore Law Firm, P.C., 300 South First Street, Suite 342,

3     San Jose, California 95113; and

4     6.   The Clerk of Court be directed to close this case.

5        These findings and recommendations will be submitted to the United States district judge

6  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

7  (14) days after being served with these findings and recommendations, the parties may file

8  written objections with the Court.  The document should be captioned "Objections to Magistrate

9  Judge's Findings and Recommendations." The parties are advised that failure to file objections

10 within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772

11 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

12 IT IS SO ORDERED.

13

14 Dated:   **September 1, 2021**            /s/ *Erica P. Grosjean*

15                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28